**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

ORLANDO MARK CLARKE, : CIVIL ACTION NO.
BOP Reg # 84591-054, : 1:12-CV-3607-JEC-JCF
  Movant, :
        : CRIMINAL ACTION NO.
  v.    : 1:05-CR-371-JEC-JCF-1
        :
UNITED STATES OF AMERICA, : MOTION TO VACATE
  Respondent. : 28 U.S.C. § 2255

**UNITED STATES MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

Now before the Court are Movant's 28 U.S.C. § 2255 motion to vacate his convictions and sentences (Doc. 229), the government's response (Doc. 233), and Movant's reply (Doc. 234).

## I. **Procedural History**

### A. **Movant's Trial And Post-Trial Motions**

On August 2, 2005, a grand jury sitting in the Northern District of Georgia returned a five-count indictment against Movant and two others.  (Doc. 3).  On June 13, 2006, a grand jury returned a superseding indictment against the same three defendants, charging Movant with conspiring to import cocaine from Jamaica into the United States (count one); conspiring to possess with intent to distribute cocaine (count two); traveling in interstate commerce to facilitate the distribution of cocaine (count

three); importing cocaine from Jamaica on August 10, 2000 (count four) and attempting to possess with intent to distribute that cocaine (count five); and conspiring to commit money laundering (count six). (Doc. 10). The government dismissed count six, and on April 19, 2007, a petit jury convicted Movant of the five remaining counts. (Docs. 94, 98, 101).

Movant filed a post-trial motion to dismiss the indictment, which ultimately included a claim that he received ineffective assistance from his trial counsel, who had withdrawn from the case due to illness and had been replaced by a federal public defender who represented Movant during his sentencing and appeal. (Docs. 158-60, 175, 182, 195, 200).[1] On August 18, 2010, this Court denied the motion to dismiss and the ineffective assistance claim. (Doc. 209). On January 7, 2011, Movant received concurrent 180-month sentences on all counts except count three, for which he received a concurrent 60-month sentence. (Doc. 215).

---

[1] Because Movant's motion to dismiss was predicated on alleged prosecutorial misconduct in the presentation of certain trial evidence and, tangentially, on trial counsel's failure to challenge that evidence, this Court ordered Movant, through his newly appointed counsel, to brief an ineffective assistance of counsel claim. (Doc. 195 at 6 ("Typically, such a claim is litigated in a collateral attack of a sentence, following entry of judgment. As the factual underpinning for a claim of ineffective assistance of counsel is related to the claim of prosecutorial misconduct in question, the Court concludes that it would be more efficient to litigate that claim in this proceeding, along with the motion to dismiss.")).

AO 72A
(Rev.8/82)

**B.**   **Direct Appeal**

On October 14, 2011, the Eleventh Circuit affirmed Movant's convictions and sentences. *United States v. Clarke*, 442 Fed. Appx. 540, 541 (11th Cir. 2011).  The court summarized the evidence against Movant as follows:

> At trial, the government presented evidence that [Movant] and Meheux had entered into a conspiracy to import drugs into the United States from Jamaica. Meheux testified that he and two of his associates, Valerie Haynes and Willie Stewart, worked as baggage handlers at the Atlanta airport. [Movant] had contacts in Jamaica who would place bags filled with drugs on flights to Atlanta. When the flights arrived at the Atlanta airport, Meheux, Haynes, and Stewart would unload the drug-filled bags and take them out of the airport before they could be sent through customs.
>
> According to Meheux, the conspiracy worked well until August 10, 2000, when one of the drug couriers, Terry Ann Chung, was caught by law enforcement. That morning, [Movant] informed Meheux that a shipment of drugs would be arriving on a flight from Jamaica. Meheux and Haynes attempted to retrieve the drugs, but [Movant] had given them the wrong bin number, so they were unable to find the bag before it was sent to customs. Meheux called [Movant] to warn him that the bag had gone past him. Eventually, Meheux met up with [Movant] in the lobby of the airport. At that point, Meheux testified, [Movant] received a telephone call from Chung, stated that she had cleared customs. Meheux warned [Movant] that it was a trap because there was no way that Chung could have made it through customs with such a large amount of drugs in her suitcase. [Movant] and Meheux eventually left the airport. Later that day, they spoke with [Movant's] contact in Jamaica, who went by the name Richie Rich, to discuss what had gone wrong with the shipment.
>
> During Meheux's testimony, the government displayed a summary

3

chart of all of the calls made to and from [Movant's] and Meheux's cellular telephones on August 10, 2000. The chart did not reflect any calls between Chung and [Movant] on the date in question. The chart did indicate that [Movant] had placed four calls to a Jamaican telephone number associated with Richie Rich. Neither the prosecutor nor Meheux mentioned the fact that Rich's name was on the chart. When the government sought to introduce this chart into evidence, [Movant] argued that Rich's name needed to be redacted because the government had not established a connection between Rich and that particular telephone number. The government agreed to redact Rich's name from the chart. [Movant] did not request a limiting instruction explaining the redaction, and the district court did not give one.

Valerie Haynes corroborated Meheux's testimony about [Movant's] involvement in the conspiracy. Haynes recalled that the drug courier tried to call [Movant] several times on the day that the drug shipment was seized, but [Movant] did not answer any those calls. [Movant] did not actually say that the courier was the one who was calling, but Haynes inferred from [Movant's] statements that it was her. Haynes explained that there were "a lot of phone conversations going on that particular day."

Agent Dennis McMichael was working at the Atlanta airport on August 10, 2000, when customs officials discovered two suitcases filled with cocaine. The tags on the suitcases indicated that they were the property of Terry Ann Chung. Agent McMichael eventually located Chung as she was walking around the airport and took her into custody. Special Agent Gregory Malloy discovered a piece of paper in Chung's purse that had a telephone number and the name "Wayne" written on it. [Movant's] full name is Orlando Mark Wayne Clarke. [Movant's] wife was the subscriber for that particular telephone number and [Movant] was listed as the contact person on the bill. Antonio Dowd, a customer service agent for Air Jamaica, testified that Chung had twice asked him to page an individual named Wayne Clarke.

4

*Id.* at 541-43.

The Eleventh Circuit also noted the following with respect to the issues Movant had raised in his motion to dismiss the indictment and in his claim of ineffective assistance of trial counsel:

> Prior to sentencing, [Movant] filed a motion to dismiss the indictment based on prosecutorial misconduct. [Movant] argued that Meheux and Haynes had testified falsely when they stated that Chung had called [Movant] on the day of her arrest because the telephone records in evidence showed that no such calls occurred. [Movant] argued that the government was required to correct the false testimony. He also asserted that his trial counsel, Turner, rendered ineffective assistance by failing to use the telephone records to impeach the testimony of Meheux and Haynes.
>
> The district court denied [Movant's] motion to dismiss the indictment. The district court observed that Meheux's testimony about Chung calling [Movant] was not necessarily false, even if no such calls were reflected in the telephone records. The district court noted that Chung may have called [Movant] on another cellular telephone that the government had never located. The district court also pointed out that Chung could have spoken with [Movant's] source in Jamaica, who may have then contacted [Movant]. Another explanation that occurred to the district court was that [Movant] may have lied to Meheux about receiving a telephone call from Chung. The court explained that [Movant] may have been trying to convince Meheux to look for Chung so that, if the police were watching Chung, Meheux was the one who would be arrested. Finally, the district court observed that Meheux simply may have been mistaken, which would not be surprising given that the events had occurred seven years before [Movant's] trial. The district court also explained that Haynes's testimony was not false because Haynes had "greatly qualified her knowledge of exactly who was calling whom that

5

day."

Moreover, even if Meheux's and Haynes's testimony was inaccurate, the district court concluded that their testimony was not material because there was substantial independent evidence of a connection between [Movant] and Chung. The court noted that Chung tried to page [Movant] two different times while she was at the airport. In addition, the district court pointed out that Chung was carrying a piece of paper with [Movant's] name and telephone number on it.

The district court also rejected [Movant's] ineffective assistance claim. The court assumed without deciding that counsel had engaged in deficient performance by failing to use the telephone records to impeach Meheux's testimony. With respect to the prejudice prong, the district court noted that "abundant circumstantial evidence" showed that [Movant] was planning to meet Chung at the airport. In addition, the district court determined that any impeachment as to the alleged telephone call would not have changed the jury's overall assessment of Meheux's credibility. Accordingly, the district court concluded that any impeachment of Meheux's testimony about the telephone call would not have changed the outcome of the case. Therefore, the court concluded that [Movant] had failed to establish prejudice.

*Id.* at 543.

Based on the foregoing, the Eleventh Circuit denied the two claims that Movant raised on direct appeal, alleging that (1) the prosecutor engaged in misconduct "by failing to correct the materially false testimony of . . . Meheux and . . . Haynes," and (2) "his trial counsel rendered ineffective assistance by failing to use telephone records to impeach Meheux's and Haynes's testimony that he had received telephone calls

6

from" Chung.  *Id.* at 541, 544-45.  The court concluded that Movant had "not shown that the government knew Meheux's and Haynes's testimony to be false" and that "the testimony about the telephone calls was not material because the government introduced other evidence connecting [Movant] to Chung."  *Id.* at 544. The court concluded that "it is doubtful that Meheux's and Haynes's testimony about this one detail affected the jury's credibility determinations." *Id.*  The court also concluded that trial counsel's failure to use the telephone records to impeach Meheux and Haynes did not prejudice Movant.  "The telephone records were not particularly important as substantive evidence because, even if Chung did not call [Movant], other evidence established a link between [Movant] and Chung.  Chung paged [Movant] twice after she arrived at the airport, and . . . officers discovered that she was carrying a paper with [Movant's] name and telephone number written on it."  *Id.* at 545.  "In addition, defense counsel would not have been able to use the telephone records to impeach the credibility of Meheux or Haynes" because "there are a number of reasonable explanations for the discrepancy between Meheux's testimony about the call and the telephone records," and "Haynes already acknowledged having no first-hand knowledge of a conversation between Chung and [Movant] and was only making an assumption that Chung was the person who was trying to call [Movant]." *Id.*

7

**C.**   **28 U.S.C. § 2255 Motion**

Movant sets forth three grounds for relief in his 28 U.S.C. § 2255 motion:

(1)   Trial counsel failed to advise [Movant] of a plea offer during [the] third day of trial . . . . [, which offer Movant] would have accepted . . . at that time.

(2)   Subsequent to trial, [Movant's] new counsel sent a critical document relied on by the Court for conviction to a handwriting expert who states that [Movant], with reasonable probability, did not author the information.   Both [the] trial judge and [the] Eleventh Circuit relied on the authenticity of the document.

(3)   Ineffective assistance of trial counsel – Failure to properly cross-examine key witness Antonio Dowd.

(Doc. 229 at 4, 5, 7; *see id.* at 7 (noting "May of 2002, Grand Jury Transcript of Atlanta Police Officer (Mr. Dennis McMichael) [(Doc. 235)] where Antonio Dowd's name is not even mentioned.")).

## II.   **Standard Of Review**

A federal prisoner may file a motion to vacate his or her sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). It is well-settled that "to obtain

8

collateral relief, a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). "[N]onconstitutional claims can be raised on collateral review only when the alleged error constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure.' *Reed v. Farley*, 512 U.S. 339, 348 (1994)." *Burke v. United States*, 152 F.3d 1329, 1331 (11th Cir. 1998) (citation altered) (internal quotations omitted).

## III.   Discussion

### A.   Because the Record Is Inconclusive, The Undersigned Recommends Holding An Evidentiary Hearing On Movant's Claim That His Trial Counsel Provided Ineffective Assistance by Failing To Convey To Him One Or More Plea Offers From the Government

#### 1.   Positions of the Parties

Movant contends that during the lunch break on the third day of his trial, "immediately after the testimony of Willie Stewart[,] who failed to identify" Movant, the government offered his trial counsel a plea deal for Movant to serve two and one-half years in prison.  (Doc. 229 at 12-13).  Movant argues that trial counsel provided ineffective assistance by informing him that "[t]he government just offered a plea deal but we are winning," without providing Movant with any further details

9

about the offer, so that he "had no chance to analyze" it. (*Id.*).  Although Movant "did

not share his counsel's optimism about the status of the trial," he did not question

counsel's judgment. (*Id.* at 13).  He learned only later, after the jury verdict but before

sentencing, that "counsel had discussed the plea offer with [his] wife and mother, and

told them both on separate occasions that the offer was for two and a half ($2\frac{1}{2}$) years."

(*Id.* at 13).  Movant asserts that he "would have accepted the plea," which would have

enabled him to see the light at the end of the tunnel, but that "[b]y failing to

communicate the plea offer, counsel turned off that light, prejudicing [Movant]

greatly." (*Id.* at 14).  Movant supports this claim with his own sworn statement, a

sworn statement from his wife, and a sworn affidavit from his mother.  (*Id.* at 21-25).

The government responds by denying that it ever made "this astonishingly low

[plea] offer" of two and one-half years. (Doc. 233 at 19).  The government notes that

the supposed motivation for this offer, that Stewart could not identify Movant at trial,

did not surprise the prosecution because the record established that "Stewart was

brought into the conspiracy by Meheux and had no direct contact with, and very little

information about," Movant.  (*Id.* at 19-20).  To the contrary, the government notes,

"[t]he final plea offer made to [Movant] by the government would have required [him]

to serve 10 years of imprisonment, and [he] rejected this offer, as the government

10

informed the Court at the pre-trial conference held on April 13, 2007, stating that the 'last best offer' made to [Movant] was for 10 years, but [he] 'is not on board with that.' " (*Id.* at 20 (citing Doc. 231 at 13-14)).  Movant's trial counsel noted at the conference that Movant might have been willing to accept a five-year deal, but the defense never received such an offer, and counsel did not "hold out much [hope] of any sort of plea agreement."  (Doc. 231 at 14-15).  Movant did not attend the conference.  (*See* Doc. 91).

The government next argues that Movant has never given any indication, prior to filing his § 2255 motion, that he would have been willing to accept even a two and one-half year plea deal.  The government notes that, to this day, Movant argues that he is actually innocent of his crimes of conviction, which argument belies his claim that he would have accepted the alleged plea deal and negates any possible prejudice from trial counsel's alleged failure to communicate the deal to him.  (Doc. 233 at 21-23). The government also notes that although Movant now contends that he learned of the plea offer during the four-year interval between his trial and his sentencing, he never mentioned that deal to anyone during that time, including in his responses to his Presentence Investigation Report and at sentencing, but he instead continued to assert his innocence, claiming "that Meheux's testimony was 'incredulous' and 'not worthy

of belief.' " (*Id.* at 23-24).

Movant replies that the government's contention that there was no two-and-one-half-year plea offer "does not negate the possibility that '<u>a plea offer</u>' was made at trial and was not communicated to . . . [him,] which would constitute a gross breach of duty by defense counsel." (Doc. 234 at 1).  He contends that the ten-year plea offer "was never relayed" to him and that he would have accepted that offer because he was "disenchanted" with his trial counsel. (*Id.* at 1-2).  He explains that he did not raise the plea offer issue earlier because (1) a claim of ineffective assistance of counsel is not appropriate in a motion to dismiss or on direct appeal, and (2) the Supreme Court only recently held that trial counsel can be ineffective for recommending that a plea offer be rejected, and thus he only recently became aware of the change in the law in this regard. (*Id.* at 2-3).

### 2.   <u>Law And Analysis</u>

To establish prejudice based on a rejected plea offer, a defendant must "establish a reasonable probability that, absent counsel's alleged ineffective assistance, he would have accepted the plea agreement." *See Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991); *see also Coulter v. Herring*, 60 F.3d 1499, 1504 (11th Cir. 1995) ("[A defendant who rejects a plea offer] must show that there is a reasonable probability that, but for counsel's errors, he would have pleaded guilty and would not have insisted on going to trial." (quotation marks and alterations omitted) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985))).

AO 72A
(Rev.8/82)

*Harrington v. United States*, 415 Fed. Appx. 986, 989 (11th Cir. 2011) (citation altered).  However, where, as here, there is a dispute that cannot be conclusively settled by "the files and records of the case" as to whether defense counsel informed his client of a government plea offer, an evidentiary hearing is required.  *See Theus v. Buss*, No. 1:08cv42-MP-CJK, 2012 U.S. Dist. LEXIS 20701, at *13 (N.D. Fla. Feb. 17, 2012) (citing *Lalani v. U.S.*, 315 Fed. Appx. 858, 860 (11th Cir. 2009), to the effect that "[t]he district court 'shall' hold an evidentiary hearing on a habeas petition '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief,' " 28 U.S.C. § 2255(b), and " 'if the petitioner alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim,' " *Aron v. United States*, 291 F.3d 708, 714-15 (11th Cir. 2002) (formatting altered)); *see also Lalani*, 315 Fed. Appx. at 861 (noting that "because the Petitioner[s'] protestations of innocence after their trial do not prevent the[m] . . . from showing prejudice, . . . there is sufficient subjective evidence in the record to warrant an evidentiary hearing to determine whether there is a reasonable probability that the Petitioners would have accepted a plea offer had their counsel successfully pursued a plea offer from the government").

The government concedes that an evidentiary hearing may be required on the

13

issues raised in Movant's first ground for relief, stating that, "notwithstanding the government's denial that a 2-1/2 year offer was made, because there is nothing in the current record affirmatively establishing this fact, if the Court believes it needs to address . . . whether counsel in fact failed to convey an offer, an evidentiary hearing limited to that one issue may be necessary."  (Doc. 233 at 20 n.11).  Movant also claims, as noted above, that he never learned of the government's ten-year plea offer as well.

Accordingly, the undersigned **RECOMMENDS** that counsel be **APPOINTED** for Movant, if he qualifies under 18 U.S.C. § 3006A, and that an evidentiary hearing be **HELD** on Movant's claim that his trial counsel was ineffective for failing to convey to him one or more plea offers from the government.  *See Quang Van Nguyen v. United States*, 487 Fed. Appx. 484, 485 (11th Cir. 2012) (remanding for evidentiary hearing and ordering district court to "appoint counsel for [movant] pursuant to Rule 8(c) of the Rules Governing § 2255 Motions, which provides that '[i]f an evidentiary hearing is required, the judge shall appoint counsel for a movant who qualifies for the appointment of counsel under 18 U.S.C. § 3006A(g)[.]' *See Shepherd v. United States*, 253 F.3d 585, 587 (11th Cir. 2001).").

**B.**     **Movant's Second Ground For Relief Fails Because He Has Not**

14

**Shown Ineffective Assistance of Counsel Based on Counsel's Failure to Solicit a Handwriting Analysis During His Trial Or Established His Actual Innocence Based On The Handwriting Analysis He Has Submitted.**

### 1.    Positions Of The Parties

Next, Movant argues that his convictions are based on insufficient evidence because a Forensic Document Examination Report (hereinafter "Handwriting Analysis") dated February 24, 2009 (Doc. 229 at 26-28), shows that it is highly probable that he did not write his name and telephone number on a document ("the note") that became a linchpin of the government's case when the note allegedly was found on Chung's person after her arrest on August 10, 2000. (*Id.* at 16). Movant contends that "[t]he most reasonable explanation or at least an equally reasonable explanation [for the expert's opinions] is that the document in question is a fabrication." (*Id.*). Movant has attached the Handwriting Analysis to his § 2255 motion (*id.* at 26-28), and he has attached the curriculum vitae of its author to his reply (Doc. 234-2).

The handwriting expert set forth his "professional opinion[s]" as follows: "1. [I]t is highly probable that [Movant] did not write the . . . [note]. 2. [T]here are indications that Ms. Chung may not have written the . . . [note]." (Doc. 229 at 27). In

15

both instances, the expert indicated "[a]dditional limiting factors that precluded a more definitive determination . . . .[,]" including, in Chung's case, "the relatively small amount of writing on the" note, the "relatively small amount of comparison handwriting," and "comparison handwriting that does not include all of the letters and numbers used in the" note. (*Id.* at 27-28). The expert also notes that "[c]omparison of the handwriting on the . . . [note] to the known handwriting of Ms. Chung disclosed a few similarities; . . . [as well as] several significant differences." (*Id.* at 27).

The government's first response to Movant's second ground for relief is that he is alleging ineffective assistance of counsel for failing to have the note analyzed by a handwriting expert and then failing to object to the note's admission at trial based on its alleged fabrication. (Doc. 233 at 26-27). The government notes that, in denying Movant's motion to dismiss the indictment,

> this Court found that [Movant's] allegation that the government manufactured or fabricated Exhibit 22 was made with "absolutely no evidentiary support," and that other evidence "strongly corroborates the exhibit's authenticity." (Doc. 209 at 28-30). Specifically, the paper had the Renaissance Hotel markings on it, and at trial it was established that [Movant] regularly stayed at the Renaissance Hotel in both Atlanta and New York. (*Id.*). Additionally, the evidence at trial established that [Movant] and Chung had spent a weekend together in Atlanta in May of 2000 - three months prior to the August 10, 2000, arrest of Chung - making it reasonable to conclude that Chung had obtained the paper at that encounter with [Movant]. (*Id.*).

16

(*Id.* at 28).  The government contends, in fact, that Chung's possession of the note dovetailed nicely with defense counsel's strategy to admit that Movant and Chung were planning to meet on August 10, 2000, although for romantic purposes and not as part of a drug conspiracy.  (*Id.* at 28-30).

The government argues further that Movant was not prejudiced by trial counsel's failure to obtain and employ the Handwriting Analysis that Movant has submitted because the analysis is inconclusive at best, indicating only that Chung *may* not have written Movant's name and telephone number on the note, not that she definitely did not do so.  (*Id.* at 30-32).  "This qualified, inconclusive report is certainly not sufficient to undermine confidence in the outcome of the trial considering the other evidence presented establishing [Movant's] guilt, including but not limited to the testimony of all the witnesses - especially Meheux, Haynes and Stewart - the phone records, and the flight and hotel records establishing a similar prior trip to Atlanta by [Movant] and Chung."  (*Id.* at 32).

The government also addresses Movant's second ground for relief as alleging insufficiency of the evidence and asserts that Movant procedurally defaulted any such claim by not raising it on direct appeal and by failing to demonstrate either cause and prejudice or his actual innocence to excuse the default.  (Doc. 233 at 37 *et seq.*).  The

17

government points out that the Handwriting Analysis that Movant claims undermines the government's case was completed on February 24, 2009 (*see* Doc. 229 at 28), more than two years before Movant filed his initial appellate brief to the Eleventh Circuit on May 25, 2011 (*see* Doc. 233-2 (docket sheet for Movant's direct appeal) at 5), and notes further that Movant does not contend that his failure to raise the claim on direct appeal was the result of the ineffective assistance of his appellate counsel.  (Doc. 233 at 39-40).  The government also contends that Movant may not use the handwriting evidence to justify consideration of his procedurally barred insufficiency-of-the-evidence claim because the handwriting evidence does not compel the conclusion that any reasonable juror who heard this evidence would not have convicted him.  (*Id.* at 41-42).  The government notes that "the report severely qualifies its findings, and is inconclusive at best."  (*Id.* at 42).

> Moreover, [Movant] has failed to address the other evidence presented at trial establishing his guilt, including but not limited to the testimony of all the witnesses - especially Meheux, Haynes and Stewart - the phone records, and the flight and hotel records establishing a similar prior trip to Atlanta by [Movant] and Chung. Considering the other evidence presented at trial, [Movant] has certainly failed to establish that, in light of all the evidence, no reasonable juror would have convicted him. Consequently, [Movant] has not met the heavy burden required to raise his insufficiency of evidence claim in a § 2255 motion, and it is procedurally barred.

18

(*Id.*).

Movant replies that the Handwriting Analysis establishes his "absolute innocence" because it eliminates him as the author of the note allegedly found in Chung's possession at the time of her arrest.  He argues that the introduction of the newly discovered expert's opinions at his trial "would have shown the jury that, more likely than not, the investigator made up the note on his own."  (Doc. 234 at 3-4).

## 2.  **Law And Analysis**

The Supreme Court set forth the standard for evaluating claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984); *see Dell v. United States*, No. 11-12904, 2013 U.S. App. LEXIS 4074, at *11, 15-18 (11th Cir. Feb. 27, 2013) (applying *Strickland* standard of review to ineffective-assistance-of-counsel claim raised in § 2255 motion).  "An ineffectiveness claim . . . is an attack on the fundamental fairness of the proceeding whose result is challenged."  *Strickland*, 466 U.S. at 697.  The analysis involves two components, but a court need not address both if the petitioner "makes an insufficient showing on one."  *Id.*

First, a federal habeas court determines "whether, in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance."  *Id.* at 690.  The court "must be highly

19

deferential" in scrutinizing counsel's performance and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. In other words, the petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (Internal quotations omitted). "Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (*en banc*).

Second, a federal habeas court determines whether counsel's challenged acts or omissions prejudiced the petitioner, i.e., whether "there is a reasonable probability"—one "sufficient to undermine confidence in the outcome"—that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

To prevail on a claim of actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial." *Id.* at 324; *see United States v.*

20

*Montano*, 398 F.3d 1276, 1284 (11th Cir. 2005) (addressing actual innocence as means of lifting procedural bar to untimely 28 U.S.C. § 2255 motion).

Movant's second ground for relief, construed either as a challenge to the sufficiency of the evidence based on the discovery of new evidence or as a claim of ineffective assistance of trial counsel, fails. As both this Court and the Eleventh Circuit have noted, there was substantial evidence to support Movant's convictions, independently of the note discovered in Chung's possession on August 10, 2000. Had that note been discredited at trial—and the undersigned does not consider the conclusions of the Handwriting Analysis to be particularly persuasive in this regard[2]—there was still ample evidence to support a verdict of guilty beyond a reasonable doubt against Movant on all of his crimes of conviction. Movant has not demonstrated prejudice arising from his trial counsel's failure to secure the Handwriting Analysis for use at his trial, nor has he demonstrated that it is more likely than not that no reasonable juror would have convicted him had the Handwriting

---

[2] The equivocal nature of the expert's opinions regarding Chung as the possible author of the note is especially relevant because other information besides the name and telephone number for "Wayne" appears on the note. (*See* Doc. 233-1 at 2 (a copy of the note)). The presence of another name and two other numbers on the note makes it more likely that Chung, not Movant, authored the note. For this reason, the expert's opinion that Movant himself most likely did not author the note is incapable of carrying the weight Movant puts upon it and would not have been outcome determinative if presented at his trial.

21

Analysis been introduced into evidence through the expert's testimony at trial. Accordingly, the undersigned **RECOMMENDS** that Movant's second ground for relief be **DENIED**.

> **C.**  **Movant Has Not Shown Ineffective Assistance Of Counsel Based On Counsel's Failure To Investigate The 2002 Grand Jury Testimony Of The Officer Who Arrested Chung And To Cross-Examine Him Or Dowd Or Both Effectively At Trial, Nor Has Movant Demonstrated His Actual Innocence Based On That Testimony**

> **1.**  **Positions Of The Parties**

Finally, Movant questions the authenticity of another item of evidence used to corroborate the alleged connection between Chung and himself, aside from the note found on Chung's person, namely, the testimony of an Air Jamaica employee, Antonio Dowd, that on August 10, 2000, seven years earlier, he had assisted Chung at the Air Jamaica desk at the Atlanta airport in trying to locate "Wayne Clarke." Movant contends that Dowd did not testify before the 2002 grand jury, which failed to indict Movant, and that Dowd's later testimony came "with the inducement of $3,000 to bolster his memory." (Doc. 229 at 16-18). Movant argues that "trial counsel's cross-examination of Mr. Dowd was pathetic. Mr. Dowd claimed that he was in the baggage area, went to customs and then materialized at the Air Jamaica 'desk' to assist Ms. Chung." (*Id.* at 17). Movant "requests that an investigator be appointed to

interview Ms. Charlene Moody, Mr. Dowd's supervisor at the time, to get her input in the matter.  It is highly unreasonable to assume that Mr. Dowd could have been in all three places in such a short period of time, thus the credibility of Mr. Dowd is challenged."  (*Id.*).  Movant asserts that "[i]t is incredible that trial counsel did not determine, when Mr. Dowd was first interviewed, where the Air Jamaica desk is located (it is located in the International Area) and how Ms. Chung could possibly walk into the 'desk' area of Air Jamaica without at least one police officer in tow, after her arrest," and, further, that "it is not reasonable for Ms. Chung, knowing that her luggage on Air Jamaica contained drugs, to go back to the Air Jamaica 'desk' when she could have used any of a number of courtesy phones which were available, to request assistance in locating someone."  (*Id.* at 18).

The government responds that "in fact, Dowd did not testify that he was in three locations.  He testified that he was in two locations: he was first at the baggage carousel in the customs area, and then he returned to the Air Jamaica offices.  (Doc. 148 at 47-48).  Consequently, [Movant's] allegation is contradicted by the record." (Doc. 233 at 33).  The government notes further that

> counsel did in fact challenge Dowd's credibility [by] bringing out on cross-examination that Dowd had been paid $3000 for the information he provided to the government, and that although Dowd remembered

23

> [Movant's] name as the person he paged for Chung, he did not remember the name of the person in Jamaica that he assisted Chung in calling. (Doc. 148 at 53-54). Counsel also brought out that Dowd never saw [Movant]. (Doc. 148 at 53).

(*Id.* at 34). The government argues that "[c]ounsel's strategic decision to limit Dowd's cross-examination to those points was certainly reasonable." (*Id.*). The government argues, in sum, that at a minimum trial counsel's performance, viewed in its totality under the circumstances at the time and not via the corrective lens of hindsight, met the constitutional standard established in *Strickland*. (*Id.* at 35-37).

Movant replies by submitting the 2002 grand jury testimony of the officer who arrested Chung, Dennis McMichael, "who never mentioned Mr. Dowd or any paging of 'Wayne Clarke' on the afternoon of August 10, 2000." (Doc. 234 at 5; *see* Doc. 235).[3] In sum, Movant argues as follows:

> The government claims that [Movant] cannot state with certainty that the jury would have acquitted. Quite frankly, with the expert testimony and his opinion, it is likely that the Government would have dismissed the case outright. [Movant] contends that depending on the

---

[3] The relevant portion of that testimony was that after authorities had identified Chung as the person who had checked the two cocaine-filled bags from Jamaica and then had failed to pick them up from the baggage carousel in the Atlanta Airport, the authorities developed evidence that "she had been observed by employees . . . [of a] business there in the main terminal . . . making telephone calls" and that she had been overheard to say "I thought he was going to be here" and "He's always here. It's not like this. He is usually here for me." (Doc. 235 at 10). The fact that the arresting officer was not asked about Dowd's involvement demonstrates nothing one way or the other regarding Movant's guilt or innocence.

24

strength of the expert, no jury would have convicted [him].

Along with the telephone records which failed to show any connection between Chung and [Movant], all that remained was the incredible testimony of Mr. Dowd and the "Note."

(*Id.* at 4-5). Movant contends that the new evidence that he has submitted severs these last two tenuous links between himself and Chung and, if presented at his trial either directly or through proper cross-examination of Dowd, Chung's arresting officer, and the handwriting expert, more likely than not would have resulted in his acquittal. (*Id.* at 3-5).

### 2. Analysis

Just as with respect to Movant's second ground for relief, however, Movant simply has not demonstrated prejudice arising from his trial counsel's alleged deficient performance regarding the cross-examination of Dowd or the 2002 grand jury testimony of the officer who arrested Chung, nor has he demonstrated his actual innocence based on the officer's grand jury testimony. Indeed, Movant has not identified a single line of questioning in this regard that would have possibly convinced a reasonable juror not to convict him. Accordingly, the undersigned **RECOMMENDS** that Movant's ground three also be **DENIED**.

### IV.   Conclusion

25

For the foregoing reasons, **IT IS RECOMMENDED** that the Court **DIRECT** that counsel be **APPOINTED** to represent Movant, if he qualifies for appointment of counsel under 18 U.S.C. § 3006A, and that an evidentiary hearing be **HELD** on Movant's first ground for relief alleging that his trial counsel failed to inform him of one or more plea offers from the government.

**IT IS FURTHER RECOMMENDED** that the Court **DENY** Movant's remaining two grounds for relief.

**SO RECOMMENDED** this  17th  day of  April ,  2013.

 /s/ *J. CLAY FULLER*
J. CLAY FULLER
United States Magistrate Judge

26