# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| ORLANDO MARK WAYNE CLARKE, | : | CIVIL ACTION NO. |
| BOP Reg # 84591-054, | : | 1:12-CV-3607-WSD-JCF |
| Movant, | : | |
| | : | CRIMINAL ACTION NO. |
| v. | : | 1:05-CR-371-WSD-JCF-1 |
| | : | |
| UNITED STATES OF AMERICA, | : | MOTION TO VACATE |
| Respondent. | : | 28 U.S.C. § 2255 |

## UNITED STATES MAGISTRATE JUDGE'S
## FINAL REPORT AND RECOMMENDATION

The Court previously denied two of Movant's three grounds for relief in his 28 U.S.C. § 2255 motion to vacate his sentence.  (Docs. 229, 236, 242).[1]  A hearing was held on his remaining claim—that trial counsel provided ineffective assistance by not advising him of a plea deal the government offered on the third day of his trial (Docs. 250, 251)—and the parties have briefed the issues (Docs. 252, 254, 255).

As this matter has progressed, Movant's claim has evolved.  Movant's initial plea-offer claim was that trial counsel received from the government a two-and-one-half-year offer on the third day of his four-day trial.  As for this alleged offer Movant claims counsel only mentioned it to him in passing, without ever telling him about its

---

[1]Movant was tried in this Court in April 2007.  His trial counsel was Mr. Barry Turner from New York.  (*See* Doc. 251 at 39).  The history of his criminal proceedings is set forth in the undersigned's previous Report and Recommendation.  (*See* Doc. 236 at 1-7).

details.  Movant asserts counsel did tell Movant's wife and mother about this offer (while concealing it from him), but these family members only told Movant about the offer's details after his trial was over.  To support this claim Movant offers the affidavits of his wife and mother, their testimony, and his own.  But in March 2008, Movant wrote the Court a letter stating that he himself had rejected the two-and-one-half-year offer.  (Doc. 152 at 3 (Movant's May 21, 2008 letter)).  Yet, after all this, now in his post-hearing brief Movant concedes that "it is unlikely . . . that an offer of two and a half years would have been presented by the Government."  (Doc. 252 at 15).

Movant now relies principally on his claim that trial counsel never informed him of the government's pretrial plea offer of *ten years*, which he claims he first learned of when the government mentioned it in response to his § 2255 motion.  The undersigned will address each of these claims.

## I.  <u>Background</u>

In recommending an evidentiary hearing, the undersigned noted the following:

Movant contends that during the lunch break on the third day of his trial, "immediately after the testimony of Willie Stewart[,] who failed to identify" Movant, the government offered his trial counsel a plea deal for Movant to serve two and one-half years in prison.  (Doc. 229 at 12-13).  Movant argues that trial counsel provided ineffective assistance by

2

informing him that "[t]he government just offered a plea deal but we are winning," without providing Movant with any further details about the offer, so that he "had no chance to analyze" it. (*Id.*). Although Movant "did not share his counsel's optimism about the status of the trial," he did not question counsel's judgment. He learned only later, after the jury verdict but before sentencing, that "counsel had discussed the plea offer with [his] wife and mother, and told them both on separate occasions that the offer was for two and a half ($2\frac{1}{2}$) years." (*Id.* at 13). Movant asserts that he "would have accepted the plea," which would have enabled him to see the light at the end of the tunnel, but that "[b]y failing to communicate the plea offer, counsel turned off that light, prejudicing [Movant] greatly." (*Id.* at 14). Movant supports this claim with his own sworn statement, a sworn statement from his wife, and a sworn affidavit from his mother. (*Id.* at 21-25).[2]

The government responds by denying that it ever made "this astonishingly low [plea] offer" of two and one-half years. (Doc. 233 at 19). The government notes that the supposed motivation for this offer, that Stewart could not identify Movant at trial, did not surprise the prosecution because the record established that "Stewart was brought into the conspiracy by Meheux and had no direct contact with, and very little information about," Movant. (*Id.* at 19-20). To the contrary, the government notes, "[t]he final plea offer made to [Movant] by the government would have required [him] to serve 10 years of imprisonment, and [he] rejected this offer, as the government informed the Court at the pre-trial conference held on April 13, 2007, stating that the 'last best offer' made to [Movant] was for 10 years, but [he] 'is not on board with that.'" (*Id.* at 20 (citing Doc. 231 at 13-14)). Movant's trial counsel noted at the conference that Movant might have been

---

[2]The statement executed by Movant's wife on August 9, 2012 states: "Counsel for [Movant] informed me on [April 19, 2007, the fourth and last day of Movant's trial, that] the Government had offered [Movant] a [plea] deal of 2 1/2 years." (Doc. 229 at 23). The affidavit executed by his mother on August 28, 2012 states: "On Wednesday, April 18, 2007, [Movant's counsel] stated to me that Prosecutor Hulsey made a plea offer to him for [Movant] of 2 1/2 years." (*Id.* at 24-25).

willing to accept a five-year deal, but the defense never received such an offer, and counsel did not "hold out much [hope] of any sort of plea agreement." (Doc. 231 at 14-15). Movant did not attend the conference. (*See* Doc. 91).[3]

The government next argues that Movant has never given any indication, prior to filing his § 2255 motion, that he would have been willing to accept even a two and one-half year plea deal. The government notes that, to this day, Movant argues that he is actually innocent of his crimes of conviction, which argument belies his claim that he would have accepted the alleged plea deal and negates any possible prejudice from trial counsel's alleged failure to communicate the deal to him. (Doc. 233 at 21-23). The government also notes that although Movant now contends that he learned of the plea offer during the four-year interval between his trial and his sentencing, he never mentioned that deal to anyone during that time, including in his responses to his Presentence Investigation Report and at sentencing, but he instead continued to assert his innocence, claiming "that Meheux's testimony was 'incredulous' and 'not worthy of belief.' " (*Id.* at 23-24).

Movant replies that the government's contention that there was no two-and-one-half-year plea offer "does not negate the possibility that 'a plea offer' was made at trial and was not communicated to . . . [him,] which would constitute a gross breach of duty by defense counsel." (Doc. 234 at 1). He contends that the ten-year plea offer "was never relayed" to him and that he would have accepted that offer because he

---

[3]At the Friday April 13, 2007 pretrial conference, the prosecutor noted that the government's "last best offer to counsel, which I think he's conveyed to his client, . . . was . . . for ten years" to serve. (Doc. 231 at 13). The prosecutor noted that trial counsel "already presented that and [Movant] is not on board with that." (*Id.* at 14). The Court noted that at the previous pretrial conference, trial counsel "had said something about [Movant] might be happy with a five-year [sentence] and that was never -- an impasse right now." (*Id.* 15). Trial counsel replied, "It was never offered." (*Id.*). Trial counsel stated that he would be flying back to New York later that day and returning to Atlanta in the early afternoon on Sunday. (*Id.* at 21-22). The conference ended at 3:22 p.m. (Doc. 91).

4

was "disenchanted" with his trial counsel.  (*Id.* at 1-2).  He explains that he did not raise the plea offer issue earlier because (1) a claim of ineffective assistance of counsel is not appropriate in a motion to dismiss or on direct appeal, and (2) the Supreme Court only recently held that trial counsel can be ineffective for recommending that a plea offer be rejected, and thus he only recently became aware of the change in the law in this regard.  (*Id.* at 2-3).

(Doc. 236 at 9-12).  A hearing was held on October 15, 2014, at which Movant, his trial counsel, and two witnesses called by Movant, his wife and mother, testified. Movant was represented by counsel.  (Docs. 250, 251).  Movant filed a counseled Post Hearing Brief (Doc. 252); the government filed a Response (Doc. 254); and Movant filed a counseled Reply (Doc. 255).

## II.   **The Evidentiary Hearing**

### A.   **Movant's Testimony**

On direct examination at the evidentiary hearing, Movant offered the following testimony.  After his arrest in New York, his extradition to Georgia, and his first meeting with his trial counsel in Atlanta in August 2006, he "never met with him again until trial" in April 2007, although he "may have spoken to him once or twice on the phone."  (Doc. 251 at 7).  Movant was "not aware of any plea offers prior to trial."  (*Id.* at 8).  Trial counsel informed him after the lunch break on the third day of his trial that the government had made a plea offer, but counsel "basically kind of

5

shrugged it off, you know, we're winning." (*Id.* at 8-9).  On the Thursday or Friday before the trial began, trial counsel stopped by the detention facility where Movant was being held "for probably about two minutes to tell me that he was flying out, and he'd see me again the Sunday before my trial started on the Monday.  So we never sat down.  We never spoke, nothing." (*Id.* at 9).  Although trial counsel had no strategy, and he did not make any promises about the trial's outcome before it began, during the trial "he was oozing with confidence." (*Id.* at 9-10).  To Movant, "it was a joke, you know.  No investigation, no evidentiary hearings, nothing." (*Id.* at 10).

When the trial began, Movant insisted on his innocence—and still does to this day, as noted below—but if a plea had been offered during the trial, he "probably would have accepted it" because "we were unprepared." (*Id.* at 10).  On the third day of trial, after a witness testified that he did not recognize Movant, trial counsel returned from lunch break and "basically said the government offered him a plea.  He kind of shrugged his shoulders and shook his head.  I didn't say anything at all, and we just proceeded." (*Id.* at 11).  Movant did not pursue the matter because he did not understand that the decision whether or not to accept a plea offer was his to make, not counsel's. (*Id.* at 11-12).

On cross-examination, Movant offered the following testimony.  His § 2255

6

motion was the first time he had asserted that during his trial he was denied the opportunity to plead to a two-and-one-half-year sentence, although he later corrected himself to note that in his correspondence with the Court (Judge Carnes) after his trial, he "may have mentioned that [he] heard that a plea offer was made." (*Id.* at 12-13). He still "even today" maintains that he is innocent of his crimes of conviction. (*Id.* at 13; *see id.* at 14). Trial counsel "never conveyed any of the [plea] offers before trial, during trial, or after trial." (*Id.* at 14). Movant only learned of the two-and-one-half-year plea offer from his wife and mother after the trial was over, although trial counsel did mention it in passing just as the trial was about to resume after the lunch break on the third day of his trial. (*Id.* at 14-15).

On re-direct examination, Movant testified that trial counsel had told him that "a prosecutor had come to him during lunch and was trying to make a plea offer, but as far as he [counsel] was concerned, he wasn't interested." (*Id.* at 15). On re-cross-examination, Movant testified that despite his unflinching insistence that he is innocent, he "would have accepted a plea offer because of [trial counsel's] unpreparedness . . . during [the] trial." (*Id.* at 16). Movant was also questioned about a letter he had written to the Court on May 21, 2008, in which he stated "Clarke rejects [the] offer" at issue here. (*Id.* at 37; *see id.* at 34-38; *see also* Doc. 152 at 3 (Movant's

May 21, 2008 letter)).  Movant attempted to explain this discrepancy—between his

testimony that trial counsel had rejected the offer without Movant's even knowing

what the offer was and his statement in the letter that he, Movant, had rejected the

two-and-one-half-year offer—as follows:

> I didn't say my attorney rejected the offer. I said Clarke rejected the offer because at that point I did not even know. During the trial, the offer was never stated to me. I learned this after -- I learned this from my wife and my mother because both of them basically had told me that an offer was made, offer for two and a half years. They were worried why I didn't accept the offer when I was facing a life sentence. And I basically said, Mom, sweetheart, I've never heard that offer. . . . [Counsel] never told me of the details of the offer or anything. He rejected it. As far as I was concerned, [counsel] was representing me, had the power to accept offers or reject offers. At that point, in my belief, I had no say-so in the matter.

(Doc. 251 at 37-38).

## B.    The Testimony Of Movant's Wife And Mother

Movant's wife testified that on the last day of Movant's trial, counsel told her

that the government had offered a plea deal for a two-and-one-half-year sentence.  (*Id.*

at 18-20).  Because Movant was incarcerated, she could not have told him about the

offer until after his trial was over.  (*Id.* at 20-21).

Movant's mother gave similar testimony.  (*Id.* at 26-33). On cross-examination,

after she first testified that trial counsel had told her about the plea offer "after

8

everything was set" – "after the trial" – "after the verdict," she changed her testimony slightly and testified that "it wasn't really after the trial, the entire trial, because [it was on] the day before the end of the trial" – "it was during the trial." (*Id.* at 30).

## C.     Trial Counsel's Testimony

Trial counsel offered the following testimony on direct examination.  The government never made a two-and-one-half-year plea offer. (*Id.* at 41-42).  Counsel would have jumped at such an offer because Movant had already served a considerable portion of that time as a pretrial detainee.  In fact, counsel had tried to convince Movant to accept the government's ten-year plea offer made "just prior to trial, just a week before trial." (*Id.* at 42).  Movant, however, had declined the offer, although counsel believed Movant would have accepted a five-year offer and tried to convince the government to make such an offer. (*Id.* at 42-43).  On Friday April 13, 2007, counsel informed the Court of Movant's decision. (*Id.* at 43).  The trial began on the following Monday, although counsel continued to press Movant to accept the offer over the intervening weekend, which he spent in Atlanta. (*Id.*).

Trial counsel did not "remember any offer being made during trial after we started the trial after jury selection.  But if two and a half years were offered, it basically would have meant that [Movant] would have walked out the door because

9

he had already done two years prior to the commencement of the trial." (*Id.* at 44). After the government corrected trial counsel that Movant had been detained approximately nine months before his trial began in April 2007, trial counsel testified that he still would have recommended accepting a two-and-one-half-year offer had it been made. "Certainly if a two and a half year offer were made, I would have tried to convince him that that would be a really good offer. It would still be up to him. But I don't think that he would have refused that offer." (*Id.* at 44-45).

Counsel explained his approach to any plea offer that he receives: "I discuss every offer that is made to my client. . . . Ultimately it's my client's decision whether to take the offer. And I explain the offer and what it means. I explain the alternatives to a plea offer. And in this case, I don't recall any offer being made after selection of the jury." (*Id.* at 45).

On cross-examination, trial counsel offered the following testimony. The ten-year plea offer "was conveyed months before we went to trial." (*Id.* at 51). When pressed on this point, however, he admitted that he did not "remember exactly when it was first made." (*Id.*). He never sends a client a letter memorializing a plea offer, rather he "would have told [Movant] orally either on the phone or in jail." (*Id.* at 51-52). On the weekend before the trial he stayed in Atlanta and met with Movant either

10

on Saturday or Sunday, "or I could have met with him both days.  I don't recall.  I

definitely met with him."  (*Id.* at 53).  He elaborated as follows:

> Well, in my meeting with him, I discussed the case and I discussed the
> offer. And I think that's what we discussed. We discussed the facts of the
> case. We discussed who we thought would be testifying in the case, what
> the evidence in the case was, and the offers that were being conveyed
> because I was negotiating that disposition in this case from the very first
> when I first got on, when I was first retained in this case.

(*Id.*).

On re-direct examination, trial counsel acknowledged, based on the transcript

of the Friday April 13 pretrial conference, that he had been mistaken about spending

the entire final weekend before the trial in Atlanta.  He had returned to Atlanta early

Sunday to meet with Movant.  (*Id.* at 55).

## III.   **The Legal Standards**

The Supreme Court set forth the standard for evaluating claims of ineffective

assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984); *see Dell v.

United States*, 710 F.3d 1267, 1272 (11th Cir. 2013) (applying *Strickland* standard of

review to ineffective-assistance-of-counsel claim raised in § 2255 motion).  "An

ineffectiveness claim . . . is an attack on the fundamental fairness of the proceeding

whose result is challenged."  *Strickland*, 466 U.S. at 697.  The analysis involves two

11

components, but a court need not address both if the petitioner "makes an insufficient showing on one." *Id.*

First, a federal court determines "whether, in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. The court "must be highly deferential" in scrutinizing counsel's performance and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. In other words, the petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (Internal quotations omitted). "Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (*en banc*). Second, a federal court determines whether counsel's challenged acts or omissions prejudiced the petitioner, i.e., whether "there is a reasonable probability"—one "sufficient to undermine confidence in the outcome"—that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

In *Missouri v. Frye*, 132 S. Ct. 1399 (2012), and *Lafler v. Cooper*, 132 S. Ct.

12

1376 (2012), the Supreme Court "clarified that the Sixth Amendment right to the effective assistance of counsel extends specifically to the negotiation and consideration of plea offers that lapse or are rejected." *Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014) (internal quotations omitted).

> The Court concluded that, in order to establish prejudice, a defendant must show a reasonable probability that but for counsel's ineffectiveness: (1) "the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)"; (2) "the court would have accepted its terms"; and (3) "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed."

*Id.* (quoting *Lafler*, 132 S. Ct. at 1385, and citing *Frye*, 132 S. Ct. at 1409); *see also Gissendaner v. Seaboldt*, 735 F.3d 1311, 1317 (11th Cir. 2013) (noting that long before *Lafler* and *Frye*, the Supreme Court "recognized that the familiar two-part [*Strickland*] test . . . applies to 'ineffective-assistance claims arising out of the plea process' " (quoting *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)); also quoting *Frye*, 132 S. Ct. at 1405 ("*Hill* established that claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland*.")).

## IV.    The Parties' Arguments

### A.    Movant's Post-Hearing Brief

13

Movant asserts that trial counsel's testimony is not believable, whereas his own recollection of events matches more closely with what we know of the actual record.

The record demonstrates that the Government at least made a plea offer prior to trial for ten years to serve and that [trial counsel] told [the Court] that [Movant] had rejected that offer. [Movant's] testimony was equally clear that no offer had been relayed to him prior to trial. While he maintained his innocence he would have accepted a plea because he was afraid of [trial counsel's] lack of preparation. [Movant's] testimony is consistent with the contemporaneous documents filed on the docket and the testimony of his mother and wife.

[Trial counsel's] testimony is not worthy of belief or the presumption that he acted reasonably. While his memory had been somewhat refreshed by the documents shown to him by the Government, there were key gaps of critically important periods of time. . . . [Trial counsel] was adamant that he had spent the entire weekend prior to trial discussing the case with [Movant] including imploring him to take the ten year offer. [Movant] testified that he saw [trial counsel] that Friday for a few minutes and not again until trial.

[Trial counsel's] certainty of when and how he relayed the ten year offer to [Movant] is undercut by the record. First, he said that the ten year offer was made a week before trial, but then he testified he had relayed that offer months before. Second, he repeatedly testified that he spent the entire weekend before trial discussing the case and the offer with [Movant]. The record demonstrates that [trial counsel] informed [the Court] he was going back to New York because he had things to do there and would not return until Sunday afternoon. Having been caught in that material misrepresentation to this Court, [trial counsel] back tracked and his memory of [the] specific[ events] corroborating [the] details [of his testimony] became less concrete.

(Doc. 252 at 12-13).

14

Movant argues that even if the Court does not believe his claim that the government offered him a two-and-one-half-year sentence, it is beyond dispute that the government offered a ten-year deal.  Noting that "[t]he case turns on a credibility determination and the primary evidence in support of the Government's position is simply not credible[,]" Movant contends that "his testimony that he did not know about any plea offer made by the Government prior to or during trial is credible.  The record does not support a finding that [trial counsel] communicated any plea offer to [him].  Based upon his testimony and the supporting record," Movant "submits that he has demonstrated that he has met the attorney error portion of the <u>Strickland</u> standard."  (*Id.* at 14-15).

Movant acknowledges, however, that he "must concede that it is unlikely, although not impossible, that an offer of two and a half years would have been presented by the Government and therefore to the Court.  [But] it is clear the Government made an offer of ten years to serve . . . ."  (*Id.* at 15-16).  Movant argues that because trial counsel never communicated that ten-year offer to him, counsel provided constitutionality ineffective assistance to Movant in this case.  (*Id.* at 16).

**B.**     **The Government's Response**

After noting that Movant has "essentially" conceded that he was never offered

15

a two-and-one-half-year sentence, the government argues that the evidence shows that trial counsel did communicate the ten-year offer to Movant, who rejected it because he was then, and still is now, convinced of his innocence.  (Doc. 254 at 1-2).

> Here, [Movant] has failed to meet his burden in demonstrating ineffective assistance of counsel . . . for failing to convey either a 2 ½ or 10 year plea offer.  The record establishes, instead, that the best offer made in this case by the government was 10 years, and that [trial counsel] discussed the offer with his client at length.  [Movant] refused to accept the offer, as he insisted that he was innocent – a position he maintains even today. [Movant's] claims are without merit and, accordingly, his Motion should be denied.

(*Id.* at 11).

The government notes that the only evidence, other than Movant's testimony, that he was offered a two-and-one-half-year deal came from his wife and mother, whose hearsay testimony is suspect due to their "sincere desire to help" Movant and their "limited" understanding of the legal system.  (*Id.* at 13-14).  The government argues that Movant's own May 21, 2008 letter to the Court puts this assertion in further doubt because in that letter Movant never contends that trial counsel did not inform him of the two-and-one-half-year offer, but instead states that he himself rejected it, which "reveal[s] that [Movant] will say anything that might reduce his time in prison, irrespective of its grounding in truth."  (*Id.* at 14).

16

The government next argues that trial counsel's testimony about his attempt to convince Movant to accept the ten-year plea offer is bolstered by counsel's statement at the April 13, 2007 pretrial conference informing the Court of the offer and of his attempts to convince Movant to accept it.  (*Id.* at 14-15).  The only evidence Movant has offered to the contrary is his testimony that trial counsel never informed him of any plea offer prior to trial.  The government notes, however, that neither Movant nor his other witnesses were asked specifically about the ten-year offer and that Movant did not claim in his § 2255 motion that he had not learned of the ten-year offer.  (*Id.* at 15-16 & n.8). .

Finally, the government argues that "the record here is devoid of any evidence establishing that [Movant] would have accepted the 10-year offer," and thus he cannot demonstrate that he was prejudiced by trial counsel's allegedly deficient performance.  (*Id.* at 19; *see id.* at 17-19).  The government contends that Movant's "continu[ing] to maintain his innocence in this case is critical" because he cannot both demonstrate prejudice and insist upon his innocence, his belief in which would have prevented him from accepting the government's ten-year plea offer.  (*Id.* at 19-20).

**C.    Movant's Reply**

Movant replies that his failure to mention the ten-year offer in his initial § 2255

17

motion shows not that he has fabricated his claim that trial counsel never told him about the offer, but rather confirms it, because he only learned of the offer during these § 2255 proceedings.  (Doc. 255 at 4-5).  Movant also argues that the fact that trial counsel

> could not provide any written documentation demonstrating that he had conveyed the offer to [Movant]. . . . should raise a sea of red flags for this Court.  Historically, plea offers in this district are written documents setting forth the terms and understandings of the parties in significant details.  How could any reasonable attorney convey all of the terms of such an agreement over a collect monitored phone call or briefly on [his] way to catch the next plane out of town.

(*Id.* at 6).

## V.    Discussion

### A.    The Legal Framework

With regard to the precise legal issues presented here, the Eleventh Circuit's recent decision in *Rivers v. United States*, No. 12-15208, 2015 U.S. App. LEXIS 1798 (11th Cir. Feb. 5, 2015), is instructive.  In that case, Rivers, the § 2255 movant, alleged that his trial counsel, McComb, "had failed to advise [him] about whether he should plead guilty or proceed to trial."  *Id.* at *4.  "Had McComb advised him to plead, Rivers alleged, he would have pled guilty and received the benefit of a three-level reduction for acceptance of responsibility . . . ."  *Id.* at *5.  At the first

18

evidentiary hearing on this issue, "Rivers testified that, after a brief introduction when McComb became his lawyer, he only ever spoke with McComb again the day before trial, when McComb instructed him on the phone to come to court the following day." *Id.* at *6. Because "McComb was dead and unable to testify in this matter," the district court accepted testimony from Rodriguez, who had represented one of Rivers's co-defendants. *Id.* at *11. The bulk of the Eleventh Circuit's discussion concerned the admissibility of Rodriguez's testimony under Fed. R. Evid. 807, the residual hearsay rule. *Id.* at *13-26.

The Eleventh Circuit found that the district court had erred in admitting the hearsay testimony, but also found that the error was harmless. *Id.* at *27-32. Noting that "Rivers bears the burden to prove the claims in his § 2255 motion[,]" *id.* at *27 (quoting *LeCroy v. United States*, 739 F.3d 1297, 1321 (11th Cir. 2014), to the effect that " 'on a § 2255 petition[, the burden of proof] belongs to the petitioner[]' "), the Eleventh Circuit stated that "[t]he only evidence Rivers has offered in support of his petition is his testimony at the first evidentiary hearing, which the district court did not credit. Therefore, if we uphold the district court's determination that Rivers was not a credible witness, his motion must still fail because he has not met his burden of proof." *Id.* at *27-28.

19

"The district court said that '[a]fter considering all of the evidence,' it found Rodriguez's testimony 'credible and consistent with common sense,' while Rivers's version of events 'ma[de] no sense and strain[ed] credulity.' " *Id.* at *28. "[T]he district court was offered a competing story from a witness it observed, giving it a reason to believe that Rivers was not credible[,] . . . [and it] was entitled to discredit Rivers's testimony." *Id.* at *30-31 (citing *Siewe v. Gonzales*, 480 F.3d 160, 171 (2d Cir. 2007), to the effect that "*falsus in uno, falsus in omnibus* — the principle that a witness who willfully testifies falsely to any material matter may be discredited generally — [is] 'a natural and instinctive tool of the factfinder, like a carpenter's hammer or plumber's wrench' ").

The Eleventh Circuit disagreed "with Rivers that any inaccuracies in Rodriguez's testimony as to the times and dates of the[ plea discussion] meetings effectively negate his testimony that the meetings occurred at some point; the fact that Rodriguez could not remember the exact dates of events that occurred five years before his testimony did not require the district court to accept the proposition that the events did not occur at all." *Id.* at *32. The circumstances of the *Rivers* case are remarkably similar to those here, notwithstanding that Movant's trial counsel was able to testify at the evidentiary hearing, unlike Rivers's trial counsel.

20

**B.**   **Movant Has Essentially Withdrawn His Claim Regarding The Alleged Two-And-One-Half-Year Plea Offer.**

Movant has conceded at this late hour that "it is unlikely" that the government ever made him a two-and-one-half-year plea offer.  (*See* Doc. 252 at 15).  The contention that such an offer was made on the third day of a four-day trial has always struck the undersigned as highly implausible, but that contention is the basis for Movant's original § 2255 plea-offer claim, as well as for the affidavits and evidentiary hearing testimony of Movant's two supporting witnesses and for much of the evidentiary hearing testimony of Movant himself.

Movant has also contradicted himself more than once as to when he learned of the plea deal allegedly offered on the third day of his trial and who rejected that offer. Movant has testified that (1) counsel told him about a plea offer on the third day of his trial, although counsel provided no further details regarding the offer (Doc. 251 at 8-12), and (2) counsel "never conveyed any of the [plea] offers before trial, during trial, or after trial" (*id.* at 14).  And Movant has tied himself in knots trying to explain what he meant by telling the Court in his May 21, 2008 letter that "Clarke[4] rejects [the] offer" even though he later testified that trial counsel rejected the offer without any

---

[4]Movant referred to himself as "Clarke" in this part of his letter to the Court.

21

input from him and that he did not understand that the decision to reject or accept the

offer was his to make, not counsel's.  As noted above, Movant testified:

> I didn't say my attorney rejected the offer. I said Clarke rejected the offer
> because at that point I did not even know. During the trial, the offer was
> never stated to me. I learned this after -- I learned this from my wife and
> my mother because both of them basically had told me that an offer was
> made, offer for two and a half years. They were worried why I didn't
> accept the offer when I was facing a life sentence. And I basically said,
> Mom, sweetheart, I've never heard that offer. . . . [Counsel] never told
> me of the details of the offer or anything. *He* rejected it.

(*Id.* at 37-38 (emphasis added)).

The undersigned finds none of the evidence or testimony offered in support of

Movant's claim that the government offered him a two-and-one-half-year plea deal to

be credible.  This claim fails.

### C.   **Movant's Claim Regarding The Ten-Year Plea Offer Also Fails.**

#### 1.   **Movant Has Not Carried His Burden Of Persuasion As To Trial Counsel's Performance.**

Movant's remaining claim is that trial counsel never informed him about the

government's ten-year plea offer.  To the extent that Movant's assertion that trial

counsel never informed him of any plea offer made "before trial, during trial, or after

trial" (*id.* at 14) is meant to include counsel's alleged failure to inform Movant of the

ten-year plea offer as well, that assertion is not credible, based on the principle of

22

*falsus in uno, falsus in omnibus*, *see Rivers*, 2015 U.S. App. LEXIS 1798, at *31, and because it is inconsistent with Movant's admission in his May 2008 letter that "Clarke rejected the offer," a statement he cannot explain away by asserting that somehow his attorney rejected the offer.  (*See* Doc. 152 at 3 (Movant's May 21, 2008 letter)).

Movant seeks to support his claim by pointing out no written documentation memorializes trial counsel's assertion that he discussed the ten-year plea offer with Movant.  (*See* Doc. 255 at 6).  The practice in this Court, and best practice, is for an attorney to memorialize his or her plea discussions with a client, in part to avoid just the type of controversy now before the Court, which can only be resolved by an evaluation of the conflicting testimony of the participants in events that occurred years in the past.  Although the Court is troubled by trial counsel's failure to offer written documentation of his plea discussions with Movant or even to locate and review Movant's case file before testifying, it remains Movant's burden to establish ineffective assistance of counsel by a preponderance of the evidence.  *See LeCroy*, 739 F.3d at 1321 (noting that "on a § 2255 petition[, the burden of proof] belongs to the petitioner" (internal quotations omitted)); *Chandler*, 218 F.3d at 1314 ("Given the strong presumption in favor of competence, the petitioner's burden of persuasion . . . [on an ineffective-assistance-of-counsel claim] is a heavy one.").  Movant cannot meet

23

his burden simply by pointing to the lack of written documentation.  Counsel's failure create a written record memorializing the plea discussions does not make his testimony on this issue unworthy of credence.

And trial counsel's testimony, while tentative at times and inconsistent regarding certain details of the events leading up to Movant's trial such as counsel's travel schedule, has the ring of truth on the most important points.  In particular trial counsel testified convincingly that he conveyed to Movant the government's last best plea offer of ten years to serve, Movant rejected the offer, and trial counsel attempted to obtain a five-year offer instead, although no such offer was secured.  (*See id.* at 41-45).  Counsel's faulty memory regarding the details of certain events which happened many years ago is not a sufficient reason to disbelieve his otherwise credible testimony.  *See Rivers*, 2015 U.S. App. LEXIS 1798, at *31.  Counsel's testimony also finds support in the discussion at the April 13, 2007 pretrial conference, when the prosecutor noted that the government's "last best offer to counsel, which I think he's conveyed to his client, . . . was . . . for ten years" to serve (Doc. 231 at 13), but Movant was "not on board with that" (*id.* at 14).  The Court even noted that at the previous conference, trial counsel "had said something about [Movant] might be happy with a five-year [sentence, but] that was [at] . . . an impasse right now." (*Id.* at 15).  The

24

Court is not inclined to discredit trial counsel's version of events on the supposition that, both at multiple pretrial conferences and during his § 2255 evidentiary hearing testimony, he fabricated his report and/or testimony that he had presented to Movant, and Movant had rejected, the government's ten-year plea offer.

### 2.    Movant Has Failed To Demonstrate Prejudice.

Aside from his failure to carry his burden of persuasion on the issue of trial counsel's allegedly deficient performance with respect to the ten-year plea offer, Movant also has failed to show that he was prejudiced by counsel's performance, as is required to make out a claim of ineffective assistance of counsel. *See Strickland*, 466 U.S. at 694.  To this day, Movant maintains he is "[a]bsolutely" innocent.  (Doc. 251 at 16).  He also has essentially acknowledged that he would not have pled guilty before trial, although he now suggests that he "probably would have accepted" a plea offer made "during trial."  (Doc. 251 at 10).  Whether or not he learned of the ten-year plea offer before trial is therefore immaterial to the outcome here because the record evidence shows that he would not have accepted it.  *See Banda v. United States*, CV 113-070 (Formerly CR 109-133), 2014 U.S. Dist. LEXIS 93547, at *16 (S.D. Ga. May 16, 2014) ("Because of [his] repeated statements of innocence, [the § 2255 movant] cannot satisfy the necessary prejudice prong of *Strickland* that requires a showing he

25

would have accepted a plea offer but for counsel's ineffective assistance." (citing *Osley v. United States*, 751 F.3d 1214, 1224 (11th Cir. 2014), to the effect that "repeated claims of innocence severely undermined the [§ 2255 movant's] after-conviction assertion that he would have taken [a] plea agreement")), *adopted by* 2014 U.S. Dist. LEXIS 93314 (S.D. Ga. July 9, 2014).

For the foregoing reasons, the undersigned concludes that Movant's final § 2255 plea-offer claim and therefore his entire § 2255 motion should be denied.

## VI.    Certificate Of Appealability

A § 2255 movant must obtain a certificate of appealability (COA) before appealing the denial of a motion to vacate.  28 U.S.C. § 2255(d); 28 U.S.C. § 2253(c)(1)(B).  A COA may issue only when the movant makes a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the [motion to vacate] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations omitted).  A movant need not "show he will ultimately succeed on appeal" because "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate."

26

*Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir.) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 337, 342 (2003)).  Although *Slack* involved an appeal from the denial of a 28 U.S.C. § 2254 petition, the same standard applies here.  *See Jones v. United States*, 224 F.3d 1251, 1254 (11th Cir. 2000) (applying *Slack* standard in § 2255 case).  Because there is no reasonable argument that Movant has set forth a meritorious claim in his § 2255 motion, a COA should not issue in this matter.

## VII.   <u>Conclusion</u>

**IT IS RECOMMENDED** that Movant's remaining § 2255 claim, alleging that trial counsel provided ineffective assistance with regard to the government's plea offer(s), be **DENIED**; that Movant's 28 U.S.C. § 2255 motion (Doc. 229) be **DENIED**; and that Movant be **DENIED** a certificate of appealability.

**SO RECOMMENDED** this <u>16th</u> day of <u>March</u>,  2015.

 /s/ *J. Clay Fuller*
J. CLAY FULLER
United States Magistrate Judge

27